## SUPREME COURT.

### DILLON agt. HORN & MORING.

A general creditor of insolvent general partners, may, on complaint and answer, where the debt is not denied, have an injunction to protect the partnership property and assets, and a receiver appointed.

*It seems* that the principle asserted by the Chancellor in the case of Innes vs. Lansing, 7 *Paige*, 583, sustaining a bill and injunction upon the application of a creditor against insolvent *limited* partners, on the ground that the partnership effects were a trust fund for the benefit of all the creditors, should apply equally to an insolvent *general* partnership.

*New York Special Term—January, 1850.*

The complaint alleged that defendants had been partners; had quarrelled, and dissolved the partnership; and that the effects of the firm had come into the hands of one of the firm, who was wasting them, and appropriating them to his own use. Plaintiff was a general creditor of the firm, but having no judgment against them, which, however, he sought in this suit.

There were other matters set out as to a joint adventure of plaintiff and defendants, which it is unnecessary to state.

Upon the complaint and answer, a motion was made to dissolve a preliminary injunction, and a counter motion to appoint a receiver of the partnership assets.

EDMONDS, Justice.—For the purposes of this motion, I must consider Horn and Moring as partners. The allegation of a partnership is, it is true, sufficiently denied, so far as Horn is concerned; but the facts adduced to show the existence of a connexion, are not sufficiently explained or done away with, to warrant me in the conclusion that, as to creditors, they were not partners.

Regarding them then as partners, the question arises, whether, at the suit of a general creditor, a receiver of the effects of the firm can be appointed?

The firm is bankrupt: not only have its notes been suffered to

lie over, but Horn avows that it will be unable to pay all its debts. A large amount is outstanding unpaid, and a large amount of property and assets yet remain to be disposed of. The members of the firm have severed their intercourse, and one of them has taken possession of all the effects, and ejected the other from all participation in its affairs. The member thus ejected, after obtaining an injunction against his copartner, and given notice of a motion for a receiver, has settled his suit, and withdrawn his application for a receiver. And now unless a receivership can be obtained on the application of a general creditor, these insolvent partners will have the entire management and winding up of the affairs of the concern. Nay more, the defendant Horn claiming that there was no partnership, and that all the assets belong to him individually, and of course may be disposed of by him in satisfaction of his individual debts, and having ejected the other partner from all control over or possession in the effects of the firm, may appropriate the whole of them to the satisfaction of his individual debts, to the exclusion of claims of the nature of the plaintiff's.

On the dissolution of a partnership, each partner has a lien on the partnership effects, as well for his indemnity as for his share of the surplus; but general creditors have no lien for their debts: their equity is that of the partners operating to the payment of the partnership debts.

Such being the general principle, upon what ground can this complaint and the injunction be sustained, so far as it relates to the debt owing to this plaintiff?

In *Innes vs. Lansing*, 7 *Paige*, 583, the Chancellor sustained the bill of a general creditor under similar circumstances, and refused to dissolve an injunction restraining the partners from receiving or disposing of the effects of the firm. He did this on the avowed ground that it was a special partnership; and that under the statute, the property of the partnership was a trust fund for the benefit of all the creditors.

It is difficult to see how it is any more a trust fund for the benefit of creditors, in the case of a special partnership, than in case of a general one.

In the latter case, no creditor of one of the partners can collect his debt out of the partnership property, until the partnership debts are paid; nor can a partner assert his claim to a surplus, until that event; so that partnership creditors have a prior claim to every body, and the property may well be said to be held in trust for them.

The fact that the members of an insolvent special partnership are forbidden by the statute to give any preferences, which is alluded to by the Chancellor, can make no difference, because a vigilant creditor is nowhere forbidden to obtain such preference by compulsory proceedings; and I am at a loss to see how the partnership effects are any more a trust fund in the one case than in the other, or in what respect new rights are conferred by the statute of limited partnerships.

I suppose that the real ground of the decision was the insolvency of the partnership, and the danger there was, from that cause, that the trust fund which exists equally in both cases, might be diverted from its legitimate purposes. The only difference between the cases, which the statute makes, is, that in case of a limited partnership, no assignment or disposition of the effects, with a view to a preference, can be made. That difference, however, was evidently not the ground on which the Chancellor entertained jurisdiction in that case; for there is no suggestion that the partners were aiming or intending to make such assignment or disposition: the injunction was not confined to those limits, but restrained the defendants from any receipt or disposition of the effects; and the final decision was retaining the injunction generally, and not merely as it forbid preferences, and allowing a receiver.

The decision was then, as I understand it, on the broad ground that the partnership effects were a trust fund for the benefit of creditors, and that the partners were insolvent. Both those elements are found in the case now before me; and the question arises whether they are sufficient, on the authority of that case, to sustain this complaint, and the application now made for a receiver.

The insolvency of the partnership and of the several partners, which is admitted in this case, is undoubtedly an important ingredient; for it is well settled, that in a dissolution, where there is no insolvency, the priority of the creditors can be worked out only through the equity of the partners; and an injunction and receiver will not be granted, except on the application of one of the partners, and then only when they do not agree among themselves. But where there is such insolvency, can those who have a prior right over all others, to the trust fund, assert that right before obtaining judgment and execution?

There is another element in this case, which must not be overlooked; and that is, that the indebtedness to this plaintiff is conceded by the defendants, and a judgment is not necessary to establish the right of the plaintiff as a creditor. Must he then obtain a lien by execution, before he can assert his admitted right?

As partnership property is acquired by partnership debts, it ought first to be applied to the discharge of them. Those funds ought first to be liable on which the credit was given; so that when the property of three partners becomes the property of two of them, it is never divisible till the partnership debts are satisfied; and joint creditors have a primary claim on the joint fund of an insolvent partnership, prior to separate creditors. How are these rights to be asserted, except in the manner indicated by the application now under consideration?

If the plaintiff must wait until he can obtain judgment on a claim which is undisputed, in the mean time these insolvent partners may waste a trust fund (to which he and his cocreditors have a prior claim), by expending it in satisfaction of their separate debts, and his right be utterly unavailing, and his priority a mere dead letter.

But this could always have been said, before the case of Innes vs. Lansing, of an insolvent partnership, whether general or limited; and yet it has never, until that case, that I can learn, been held to be good ground for the interference of the Court of Chancery before judgment and execution. In that case, however, it is held otherwise, and upon grounds which I confess appear to me to be well taken.

My embarrassment is, how to avoid that decision, and the application of its principle to the case before me.

It may be said that the Chancellor did not intend that his ruling should extend beyond a limited partnership. That may very well have been his intention; but I repeat that I can not see any difference in the rights of creditors in a general or a limited partnership, nor any reason why the principle which has been laid down as to the latter does not apply with equal force to all cases of insolvent partnerships, where the indebtedness of the moving creditor is conceded.

It seems to me that to hold that this action will not lie, I must overturn that decision; and that I am not disposed to do, though I agree with the Chancellor in the opinion that it is somewhat of an enlargement of the prior jurisdiction of the court. But I am not alarmed at that consideration in this case, and for this reason: Under the English system of jurisprudence, from which we have borrowed our equitable jurisdiction, there is a remedy for a case like this under their bankrupt laws. But as we have no bankrupt law; unless we retain the principle of Innes vs. Lansing, and extend its operation, we shall have no adequate means of restraining insolvent partners from wasting what is most justly held to be a trust fund, or of enforcing the clearly acknowledged right in partnership creditors to priority of payment over all the world. Therefore it is that I hesitate to overrule that case, or to circumscribe the application of its principle; preferring to submit that question to the court in bank, where it may go on appeal if I retain the injunction, and order a receiver to be appointed.

These remarks apply only to the question of the general debt of this plaintiff, about which alone I have my doubts. So far as the joint adventure of these parties, which is set out in the complaint and admitted by the defendants, is concerned, there is no difficulty: the injunction *pro tanto* must be retained, and a receiver be appointed of course. And in order to take the other question before the general term, I shall retain the injunction *in toto*, and order a receiver to be appointed.

The costs of these motions to abide the event.